IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| PATRICIA CALLOWAY,<br><br>                       Plaintiff,<br>v.<br><br>AEROJET GENERAL CORP.,<br><br>                       Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 1:08CV162 DAK |

      This matter is before the court on Defendant's Motion for Summary Judgment. A hearing on the motions was held on March 3, 2010. At the hearing, Plaintiff Patricia Calloway was represented by Philip C. Patterson. Aeorjet General ("Aerojet") was represented by Mary Anne Q. Wood. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the motions under advisement, the court has further considered the law and facts relating to this motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

      In the instant case, Plaintiff has alleged a claim of sexual harassment under Title VII against her boss, Mr. Dibble, who was Defendant's highest ranking official based in Utah. Ms. Calloway began working as a receptionist at the Utah Aerojet facility in late 2003. At this time, she was the employee of a temporary employee agency. In early 2004, after applying for a regular full-time position with Aerojet, she began having a consensual affair with her boss. Soon

thereafter, she was hired as his secretary. During this approximately two-year affair, Plaintiff never complained of sexual harassment.

Although Plaintiff did not complain, other people around her did. In August 2004, another Aerojet employee informed the Human Resources department in Gainesville, Virginia, that a Northrop employee was complaining about the behavior of Mr. Dibell and Ms. Calloway. Northrop was Aerojet's prime contractor and was located in the same facility at the Freeport Center. Upon receiving this phone call, Aerojet began an investigation and scheduled a special training session for the Utah office on sexual harassment. Then, approximately a week later, a confidential call was made to the Northrop hotline and passed on to Aerojet. The employee reported the improper relationship and that Ms. Calloway had received a promotion as a result of that relationship.

On August 31, 2004, Virginia Slusher, Senior Human Resources Representative, traveled to Utah to begin an investigation and conduct a special training session on sexual harassment, which Ms. Calloway attended. Ms. Slusher also met with several other employees, including Mr. Dibell. Mr. Dibell, however, denied the relationship.

In September, Susan Imperatore, Director Human Resources, and William Schwennesen, Division Counsel, traveled to Utah to conduct further interviews. On September 8, 2004, Ms. Imperatore and Mr. Schwennesen interviewed Ms. Calloway. Ms. Calloway denied that Mr. Dibell had engaged in any improper conduct toward her and described their relationship as that of employee/supervisor and friends. Ms. Calloway testified later that she believed that her consensual affair with Mr. Dibell was her own business, not Aerojet's. During that September

2004 meeting, Ms. Imperatore reviewed the then-applicable sexual harassment and reporting policy with Ms. Calloway. In addition, Ms. Imperatore and Mr. Schwennesen left their business cards with Ms. Calloway, and asked her to call either of them if she were ever subjected to any behavior in violation of the Policies.

After the investigation, Ms. Imperatore was unable to conclude that Mr. Dibell or Ms. Calloway were engaged in a consensual relationship. Ms. Imperatore, however, was still determined to take action under the circumstances, and, therefore, Mr. Dibell's direct supervisor, Dale Adams (who was located in Sacramento, California) counseled Mr. Dibell about the perceptions his behavior may create. On October 11, 2004, Mr. Adams sent a letter reprimanding Mr. Dibell for creating the perception of an improper relationship with Ms. Calloway, warning him against any further unprofessional behavior, warning him that he may not retaliate against anyone, and further warning that "[a]ny further violations of these policies will not be tolerated." Ms. Calloway knew of the letter because Mr. Dibell told her about it and stated that they could not be seen together anymore. It was only after Mr. Dibell decided that he would not divorce his wife that Ms. Calloway became angry and ended the affair sometime in the summer or fall of 2005. But even then, she still never complained.

In the instant action, she now claims that Mr. Dibell sexually harassed her by pressuring her to renew their affair and becoming rude and critical when she refused his sexual advances. She admits, however, to having consensual sex with him approximately five times after she claims she ended the affair, including as late as March 2007. She received a promotion and a couple pay increases from August 2005 through January 2007. She admits that Aerojet never

3

took any adverse employment action against her. She also received yet another training session on Aerojet's policies on November 7, 2006.

Ms. Calloway voluntarily left Aerojet in June 2007, taking a short-term disability leave. In October 2007, while she was going through the divorce process with her third husband, her new boyfriend allegedly told Ms. Calloway's soon-to-be ex-husband about Ms. Calloway's affair with Mr. Dibell. Ms. Calloway's husband called the Aerojet hotline–without Ms. Calloway's knowledge or authorization–to complain about his wife's affair and the alleged sexual harassment that she endured.[1] Ms. Calloway testified that she never would have reported the alleged harassment.[2] Aerojet subsequently terminated Mr. Dibell's employment.

The issue in this case is whether the *Ellerth-Faragher* defense protects Defendant by barring Plaintiff's claims. In addition, the parties disagree as to whether the individual to whom Plaintiff allegedly "complained"–Ms. Ova–was a "manager." The court finds that Ms. Ova was not a manager and that the *Ellerth-Faragher* defense applies to bar Plaintiff's action. Therefore, the court grants Defendant's motion for summary judgment.

## DISCUSSION

An employer may assert the *Ellerth-Faragher* affirmative defense to liability or damages for harassment when "(a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (b) the plaintiff employee unreasonably failed to take

---

[1] At the time this case was filed, the divorce had been put on hold but Mr. and Ms. Calloway do not live together.

[2] After she had been on leave for over six months, Aerojet received notification that Ms. Calloway had been approved for long-term disability leave. At no time did Ms. Calloway inform Aerojet that she wanted to return to work.

advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742, 764 (1998); *Rubidoux v. Colorado Mental Health Inst. at Pueblo*, 173 F.3d 1291, 1295 (10th Cir. 1999). The purpose of the *Ellerth-Faragher* defense is to "recognize the employer's affirmative obligation to prevent violations and give credit . . . to employers who make reasonable efforts to discharge their duty." *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998) (emphasis added).

Ms. Calloway admits that, despite knowing about relevant policies and being repeatedly trained on them, she never complained to Aerojet about any alleged harassment. In fact, while she was employed, she lied when Aerojet tried to investigate her relationship with her former boss. Because Ms. Calloway completely failed to utilize any of the opportunities which were offered her, Aerojet cannot be liable for sexual harassment. Ms. Calloway never gave Aerojet the opportunity to prevent or correct any harassment, and, in fact, she stymied Aerojet's efforts in that regard.

Thus, Aerojet not only "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," Aerojet did everything possible to respond to a situation that might give rise to sexual harassment. Aerojet did so even without an actual complaint from a purported victim of harassment. Aerojet's efforts to prevent harassment were thwarted only by Ms. Calloway's and Mr. Dibell's lack of candor.

Plaintiff argues that there are disputed facts that preclude summary judgment. First, she contends that she did not seek the protections offered by Aerojet because she concluded, based on her discussions with Mr. Dibell, that (1) workplace sexual misconduct charges had been twice before filed against Mr. Dibell during his Aerojet employment without adverse consequence to

5

him whereas both of the complaining female employees had thereafter terminated from Aerojet employment; (2) Calloway's employment at-will status allowed Mr. Dibell to terminate her employment at any time with or without cause; and (3) Mr. Dibell was Aerojet's ranking Utah official and Calloway believed that Aerojet's Gainesville, Virginia human resource office was geographically too far removed from Utah to protect her if Mr. Dibell chose to retaliate against her.

To overcome her duty to make Aerojet aware of any alleged harassment, Ms. Calloway must come forward with some admissible evidence that Aerojet would not have responded to her complaints or that she would have suffered retaliation. ""A credible fear must be based on more than the employee's subjective belief. Evidence must be produced to the effect that the employer has ignored or resisted similar complaints or has taken adverse actions." *Leopold v. Bacarrat, Inc.*, 239 F.3d 243, 246 (2nd Cir. 2001); *see also*, *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, (9th Cir. 2003) (rejecting, for lack of evidence, plaintiff's assertion that she was uncomfortable using complaint procedure because of previous unsatisfactory experiences). Instead, Ms. Calloway offers allegations of inadmissible hearsay from Mr. Dibell himself. Ms. Calloway has not created a genuine issue of material fact about this issue, and even if she did have some evidence of such fear, no reasonable jury could conclude, in light of the circumstances of this case, that Ms. Calloway failed to report the alleged sexual harassment because she was fearful of retaliation, including losing her job.

Ms. Calloway next claims that in 2005, she informed Kathy Ova, Aerojet's Procurement "manager" that she had been having a sexually intimate relationship with Mr. Dibell for a year and a half. Ms. Calloway also claims that she told Ms. Ova in the summer of 2005 that the

relationship had to end and that Mr. Dibell had thereafter sexually harassed her and that she had asked him to stop.   Therefore, she argues, Aerojet unreasonably failed to prevent and correct Dibell's harassing conduct after this conduct was disclosed to Kathy Ova because Ms. Ova was placed on notice of the sexual harassment and did not notify the appropriate management officials.

In determining whether an employee is a manager, courts distinguish between mere "nomenclature," and "those who are entrusted with actual supervisory powers." *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1033 (7th Cir. 1999).   In fact, however, Ms. Ova had neither the title nor the responsibilities of a "manager."   Ms. Ova's title was, first, a "Senior Subcontracts Administrator," then, a "Procurement Subcontracts Specialist."   She had limited independent purchasing power for the Utah facility.  She had no subordinates and supervised no one.  She had no authority to hire or fire anyone, and would not have had any ability to correct harassing behavior had she known about it – which she denies. She was not responsible for employee evaluations.  She was not a "manager" either through "nomenclature" or in substance. Thus, Defendant has marshaled evidence such that no reasonable jury could conclude that Ms. Ova was a manager, and Plaintiff has no evidence to the contrary, except for her own conclusory statements.   Moreover, in her deposition, Ms. Calloway testified that she was not "reporting" harassment to Ms. Ova, just seeking advice.  Ms. Calloway also testified in her deposition that Ms. Ova had no obligation to report what Ms. Calloway allegedly told her.[3]

---

[3] For purposes of summary judgment, Defendant does not dispute Ms. Calloway's claim that she told Ms. Ova that she had been harassed.   Defendant points out, however, that Ms. Ova denies that Ms. Calloway told her she was being harassed.  Ms. Ova's perception was that Ms. Calloway was eager to continue her relationship with Mr. Dibell and was frustrated because Mr. Dibell would not leave his wife.

In sum, the court finds that Ms. Calloway has failed to create a genuine issue of material fact as to whether she justifiably feared reporting any sexual harassment or whether Ms. Ova was a "manager" whose knowledge would be attributed to her employer for purposes of Title VII. Aerojet, therefore, is entitled to summary judgment on Ms. Calloway's claims.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [docket # 8] is GRANTED, and this action is hereby DISMISSED with prejudice. The Clerk of the Court is directed to enter judgment in favor of Aerojet General Corporation and against Plaintiff.

DATED this 11th day of June, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge